EMILY DONLON, Petitioner-Appellee, *v.* SUSAN JANE MILLER, a Minor, *et al.*, Defendants-Appellants.

Third District    No. 75-407

Opinion filed September 16, 1976.

66

Louis Olivero, of Olivero & Olivero, of Peru, for appellants.

Alan B. Marsh, of Ottawa, guardian ad litem, for appellant Susan Jane Miller.

James J. Duncan, of Duncan & Muenchow, of Peru, for appellee.

,Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant Mary Kay Znaniecki appeals from a decree of adoption of Susan Jane Miller, her minor child (by petitioner Emily Donlon) entered in the Circuit Court of La Salle County.

At the time of the filing of the original petition to adopt on the 22nd day of August, 1974, Susan Jane Miller was 6 years of age. Defendant Znaniecki, the mother of the child, appeared specially and challenged the jurisdiction of the court as to her and, also, as to the child Susan Jane Miller. In her special appearance, it was shown that she was a resident of the State of Washington.

The trial court determined that it had jurisdiction of the subject matter

and of the defendant Znaniecki, as well as the child Susan Jane Miller, and denied an accompanying motion to quash service of process, which was made personally on defendant in the State of Washington.

Major contentions on appeal made on behalf of defendant Znaniecki assert that the trial court lacked jurisdiction over defendant Znaniecki as well as over the child Susan Jane Miller and the subject matter of the adoption of this child, who was sought to be adopted based on the contention that neither the child nor Znaniecki were residents of Illinois nor were they in open court during the proceedings. A challenge was also made on the ground that the trial court failed to comply with the procedural requisites of the Illinois Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—1 *et seq.*). In addition to other contentions made, the petitioner-appellee, Emily Donlon, initially argues that the appeal should be dismissed for the reason that notice of appeal was untimely filed. The decree of adoption was entered on August 14, 1975. On September 2, 1975, defendant Znaniecki filed the motion to vacate which was denied by the court on September 8. Notice of appeal was filed on October 8, 1975.

■■ The notice of appeal was filed more than 30 days after the entry of the judgment, but only 30 days following disposition of the motion to vacate the judgment. The Supreme Court Rules of this State provide that an appeal must be filed within 30 days of the entry of the judgment, unless a post-trial motion is filed within that time, in which event, the notice of appeal is required to be filed within 30 days of disposition of the motion (Ill. Rev. Stat. 1975, ch. 110A, par. 303(a)). Under such provision we construe the motion to vacate as a post-trial motion and that the instant notice of appeal was filed in time.

Petitioner Donlon also points to section 20 of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—20) which provides initially that the Civil Practice Act and the Supreme Court Rules shall apply in adoption proceedings, except where specifically otherwise provided in the Adoption Act. On this basis it is contended that no appeal may be taken more than 30 days after the judgment or decree has become final. Petitioner Donlon argues that the legislature thus demonstrated an intent to prohibit any appeal of an adoption decree other than within 30 days of the entry of the decree, irrespective of and other relief sought by a party following such entry of the decree.

■■ We do not so interpret section 20 of the Adoption Act. While we are conscious of the desire to bring adoption proceedings to an end rapidly, on the premise that extended litigation might cause emotional harm to the child, we do not believe that the legislature by its language in section 20, meant to make an exception to the provisions of Rule 303(a) of the Supreme Court Rules which would otherwise be applicable. As we

have indicated, we believe that the notice of appeal was, therefore, filed within time on the 30th day following the entry of the order disposing of the motion to vacate.

An understanding of the issues raised by defendant requires that we review the facts briefly. Susan Jane Miller was born on June 11, 1968, to Mary Kay Miller (now Mary Kay Znaniecki) a few months after her divorce from John Miller, the father of the child. By the terms of the divorce decree entered as between the parties, custody of the as yet unborn child was to be vested in the mother. A week after Susan was born, however, Mary Kay Znaniecki placed the child with Emily Donlon. Mrs. Donlon took care of and raised Susan for over six years. During this time, defendant visited the child only a couple of times, all in the first two years of her life, and thereafter only inquired a couple more times as to the well-being of the child. After a period of approximately six years had expired, defendant Znaniecki appeared at the Donlon home on July 6, 1974, and asked to take Susan to a christening. Mrs. Donlon agreed. The child was not returned to Mrs. Donlon, and a few weeks later Mrs. Donlon discovered that defendant had gone to Woodland, Washington, with the child. The petition to adopt was thereupon filed, approximately 45 days after Mary Kay Znaniecki left the State with Susan Miller. Service of process from the La Salle County circuit court was made personally by Washington law enforcement officials on the child and on her mother, defendant Znaniecki.

As we have previously noted, counsel for defendant Znaniecki ·appeared specially in court to challenge the jurisdiction of the court over the person of defendant under the terms of the Illinois statutes (Ill. Rev. Stat. 1975, ch. 110, par. 20). Following a hearing on this issue, the trial court determined that it had jurisdiction under the so-called "long-arm" statute (Ill. Rev. Stat. 1975, ch. 110, par. 17). It was contended that defendant had committed a tortious act within the State of Illinois, within the meaning of section 17(1)(b), as interpreted in *Poindexter v. Willis* (5th Dist. 1967), 87 Ill. App. 2d 213, 231 N.E.2d 1.

Thereafter defendant filed a motion to dismiss the complaint. When that motion was dismissed, defendant filed an answer and an affirmative defense both of which were stricken. At the adoption hearing itself, counsel for defendant refused to participate, still maintaining that the court lacked *in personam* jurisdiction over Mrs. Znaniecki.

Though defendant Znaniecki was twice ordered to bring the child into court and twice was found in contempt for failure to do so, defendant Znaniecki did not appear at any of the proceedings, nor did the child, Susan Miller. A guardian ad litem appointed by the court to represent the child advised the court that he could not recommend adoption without having met the natural mother and having found out about her current

situation. The trial court, nevertheless, granted the adoption, and, as we have indicated, the appeal to this court was made after a denial of defendant's motion to vacate the decree of adoption. We should note that the father of Susan Miller, John Miller, appeared at the hearing and consented to the adoption by the petitioner, Donlon.

The trial court, in answering the challenge to jurisdiction over defendant Znaniecki, observed that defendant had waived the issue of *in personam* jurisdiction by filing motions and responsive pleadings after the motion to quash service was denied. The Civil Practice Act, however, has a provision for special appearances and expressly states that such general appearances as have been made in this case, following an unsuccessful special appearance attacking jurisdiction, do not waive the fundamental issue of whether the party is amenable to process issued by an Illinois court. Ill. Rev. Stat. 1975, ch. 110, par. 20(3).

■■■ Since defendant was a resident of the State of Washington and had made a special appearance to contest jurisdiction, this defense was not waived by the filing of a general appearance thereafter (*Colony Press, Inc. v. Fleeman* (1st dist. 1974), 17 Ill. App. 3d 14, 20, 308 N.E.2d 78; *Keats v. Cates* (1st Dist. 1968), 100 Ill. App. 2d 177, 183-84, 241 N.E.2d 645; *Koplin v. Thomas, Haab & Botts* (1st Dist. 1966), 73 Ill. App. 2d 242, 246-47, 219 N.E.2d 646). Normally, Illinois courts would have no interest in, or jurisdiction over, an adoption petition which concerned a nonresident child and nonresident parents, none of whom have had any contact with the State of Illinois, even though the petition was filed by a citizen of the State of Illinois. Since it appears that defendant Znaniecki, the mother, and the child, Susan Miller, had moved out of Illinois (the child by act of the mother) at the time of the filing of the adoption petition, the exercise of jurisdiction over a particular case and over a defendant therein must be based on some distinction arising from the facts in the case which reflects an interest in the State of Illinois, and at the same time does not create an unfair obligation on defendant to appear in Illinois courts.

■■ As concerns jurisdiction over the child, we note that there is no specific provision in the Adoption Act requiring that the child sought to be adopted either be a resident of the State or else be present in court during the proceedings (although one judicial opinion intimates such a prerequisite. See *Hopkins v. Gifford* (1923), 309 Ill. 363, 369, 141 N.E.2d 178). One section of the Adoption Act, however, suggests the presence of the child at the final hearing, but allows the court to waive this requirement for good cause shown. Ill. Rev. Stat. 1975, ch. 4, par. 9.1—14.

■■ Where the child is of such age as to be incapable of understanding the nature of the proceedings except in very broad and simple terms, normally the decision of the legal custodian or guardian (in this case the

mother), whether to see that the child appears in court pursuant to summons such as was served in this case, was a decision for her to make. Certainly defendant Znaniecki cannot be heard to complain of the child's absence from court, since it was fully and solely within her power, apparently, to bring the child before the trial court.

Under the facts in this case, however, we feel that the minor child could still be considered as domiciled in the State of Illinois, if the allegations of the complaint are true, and thus could properly be the subject of a petition to adopt (if properly sustained) which was filed in an Illinois court.

The child was born in Illinois and lived in Illinois for her first six years. She left the State only a matter of weeks before the instant petition was filed. The nature of the departure of the child as evidenced by the scanty factual portion of the record, and the brevity of the period of time that the child was out of the State before the petition was filed, tends to offset the fact that the child was outside the State at the time of the filing of the petition.

■■  Although generally the domicile of an infant child is considered to be that of the child's parent or guardian (25 Am. Jur. 2d *Domicil* §§63—76 (1966)), we believe that Susan Jane Miller could be said to have acquired the domicile of the petitioner under the peculiar circumstances of this case. For six years, since Susan was a week old, she has been in the *de facto* care and custody of Emily Donlon. The allegations of the petition, and of the evidence at the hearing, showed a virtually complete abandonment of the child at that time by Mary Kay Znaniecki during this long period of time. If in fact there was a surreptitious removal of the child from the State by defendant, this alone should not operate to change the status of the child so far as domicile is concerned. Illinois courts have retained jurisdiction over minor children, whose parents are divorced in Illinois, until the majority of the children, despite the fact that the children take up residence outside the State, and even where both parents have left the State. *People ex rel. Koelsch v. Rone* (1954), 3 Ill. 2d 483, 485, 121 N.E.2d 738; *Crawley v. Bauchens* (5th Dist. 1973), 13 Ill. App. 3d 791, 795, 300 N.E.2d 603, *aff'd,* 57 Ill. 2d 360, 312 N.E.2d 236 (1974); *McClellan v. McClellan* (4th Dist. 1970), 125 Ill. App. 2d 477, 481-84, 261 N.E.2d 216; *Carlson v. Carlson* (1st Dist. 1967), 80 Ill. App. 2d 251, 255, 225 N.E.2d 130.

■■  Petitioner argues that the court has jurisdiction over the child in this case because the divorce decree in 1967 awarded custody of Susan to defendant Znaniecki. While we do not hold here, that the court's continuing jurisdiction over custody of the child resulting from the divorce decree could be relied upon by a third party in a separate and original action, as opposed to post-decretal proceeding in the divorce

case, we do conclude that these cases show a strong interest that the State of Illinois has in the care and protection of minor children in proceedings in this State. If the court is vested with jurisdiction, by reason of the prior decree, over a child long since removed from the State, we believe jurisdiction is proper over a child who has lived all her life, except for a few weeks, in Illinois in the custody of an Illinois resident.

Defendant cites *Noel v. Olszewski* (1953), 350 Ill. App. 264, 112 N.E.2d 727, for the proposition that a court cannot have jurisdiction over an adoption petition if the child is neither a resident of Illinois nor actually present in the State. While that case did cite with approval a Minnesota case which held as so indicated (350 Ill. App. 264, 271), we read *Noel* more restrictively. *Noel* actually holds only that where the adoption statute requires the consent of a minor over 14 years of age to be given in open court, the court could not acquire jurisdiction without meeting that requirement. In any event, if the child is in fact a domiciliary of the State of Illinois, that would meet the *Noel* requirement as proposed by defendant.

The question remains whether there was jurisdiction over defendant Znaniecki. The trial court found that it did have jurisdiction under the "long-arm" statute, to which we have referred (Ill. Rev. Stat. 1975, ch. 110, par. 17). There was adequate notice, in form of personal service, on defendant Znaniecki in the instant case and a sufficient opportunity to appear and defend.

The trial court found that there was jurisdiction over defendant in that defendant had embarked upon a course of tortious conduct, and that a jurisdictional basis was thereby afforded under section 17(1)(b) of the Civil Practice Act. The specific actions labeled tortious by the court included:

(1) giving birth to a child in Illinois and thereafter abandoning, deserting and neglecting to support or take care of the child;

(2) neglecting to obtain a contribution towards the child's support from the father;

(3) failing to discharge responsibility as the custodial parent;

(4) requiring another, Emily Donlon, to support and provide for the child at the other's expense;

(5) being responsible for the necessary support of the child, and not furnishing support.

While these acts do involve breaches of duty on part of the defendant, which would make her liable to the State or to Emily Donlon for amounts provided by them for the child's support, the actions are not tortious in the strict sense of the word.

In *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137, the plaintiff had filed suit in Illinois against the executor of his father's estate, who lived in Minnesota, as had the father for the last 27 years of his life.

The plaintiff claimed damages resulting from the father's abandonment of him, and the resultant destruction of the family unit, loss of financial support, loss of the usual fatherly affection, and loss of other incidents of a parent-child relationship. The executor resisted service of process which was made under section 17 of the Civil Practice Act, and the court agreed that there was no jurisdiction under section 17(1)(b), and found that the father's conduct had not been tortious as the child's suffering was not compensable in damages.

A year later, in *Poindexter v. Willis* (5th Dist. 1967), 87 Ill. App. 2d 213, 231 N.E.2d 1, the court, without mentioning *Mroczynski,* found that the failure of a nonresident father to support his child living in Illinois was tortious within the meaning of section 17(1)(b) of the Civil Practice Act. The court held that "tortious act" as used in that statute was not intended to be strictly or technically construed, but rather encompassed any act which involves a breach of duty to another and makes the one committing the act liable to the other in damages. *Poindexter v. Willis* (5th Dist. 1967), 87 Ill. App. 2d 213, 217-18, 231 N.E.2d 1.

■■ Abandonment of a child is the basis for a cause of action here, which involves an adoption petition requesting a termination of parental rights. It is not only akin to tortious conduct, as indicated previously, but also the related family law concept of grounds for divorce, commission of either of which within the State of Illinois gives the Illinois courts *in personam* jurisdiction over the actors in the cause of action arising out of such acts. Ill. Rev. Stat. 1975, ch. 110, pars. 17(1)(b), (e).

■■ The provisions of section 17 referred to do not specifically mention grounds for termination of parental rights and adoption as a basis for extraterritorial jurisdiction, nor do they expressly say that the commission in Illinois of *any* acts giving rise to a cause of action provides jurisdiction over the actor for that cause of action. Yet the foundation for section 17 in each of the enumerated subsections of section 17(1) is based on that principle. The spirit and intent of section 17 is to provide jurisdiction in Illinois courts over nonresidents who commit acts within the State boundaries that give rise to causes of action against them.

In the leading case of *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, the Illinois Supreme Court observed:

"Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause."

The court also stated at page 384:

"The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative'

(*International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945),) but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense."

■■ In the *Nelson v. Miller* case, the Supreme Court of this State went on to quote approvingly at length from the *International Shoe* decision referred to, wherein the United States Supreme Court said:

" * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. 310, 316, 90 L. Ed. 95, 102; 11 Ill. 2d 378, 384.

■■ We, therefore, see a consistency in using the alleged grounds for termination of parental rights and adoption as a basis for *in personam* jurisdiction over a nonresident defendant in an adoption cause filed in Illinois. It is consistent with the ideas and purposes underlying section 17 of the Civil Practice Act. We see no inconsistency with the due process clause in such application. During her six-year abandonment of Susan Jane Miller, defendant had sufficient contacts with the State of Illinois, and through personal service had adequate notice and an opportunity to be heard. Defendant, although she abandoned the child for a six-year period, invoked the benefits and protection of the State for her child, and allowed an Illinois resident to be the *de facto* custodian and the source of support for the child for that time. We believe there should be no denial of the minimal right of the Illinois courts to retain jurisdiction over such defendant for the purpose of determining whether to terminate such rights and grant the requested adoption. We, therefore, conclude that the trial court properly found that it had jurisdiction over defendant Znaniecki.

The final issue raised by defendant involves a more fundamental problem in the assertion that the trial court failed to comply with certain procedural requisites of the Adoption Act. Defendant asserts, and it is supported by the record, that the trial court did not appoint an agency to investigate the allegations of the petition and the situation of the defendant Znaniecki as well as the child and to make a report thereof (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—6), and that the trial court did not enter a temporary order vesting custody in the petitioner Donlon, followed by the six-month interim period after which the final adoption decree may be entered. Ill. Rev. Stat. 1975, ch. 4, pars. 9.1—13, 9.1—14.

■■ ■ While petitioner responds that the investigation and report

are not mandatory, and that it would have been futile to enter a temporary custody order since defendant refused to produce the child in court, we believe that the purpose and significance of the portions of the Adoption Act referred to would not be fully complied with if there were no investigation and report. An impartial and thorough investigation and report by an agency would be of unique and indispensable value to the trial court in making its determination as to whether to allow the petition to adopt. We do not believe there is any substitute for such procedure. The temporary order and the six-month interim waiting period are likewise deemed important to insure that the child and prospective parent or parents can live together compatibly in a manner benefitting the welfare of the child. While the need for a temporary order and six-month interim period might superficially seem to be nonexistent, since the child had already been living with petitioner Donlon for six years, we note that at the time of the hearing, the child had been out of the Donlon home for a year and that now two years have passed with the child in custody of her mother. These factors might well necessitate a denial of the petition to adopt as well as an interim order under section 13 of the Adoption Act. While the father has consented to the adoption, the mother has not done so, and, in absence of special circumstances, which, in the interest of the child, are invoked by the court to deprive her mother of custody of such child as well as any future interest in the child, a hearing to determine the status of the child and of the mother appears to be indispensable to fully comply with the objectives of the Adoption Act.

■■ We, therefore, conclude that the action of the trial court in granting almost a summary adoption, and in failing to comply with sections 6, 13 and 14 of the Adoption Act under the facts and circumstances in this case, require that such decree of adoption be reversed and the cause be remanded for the purpose of a new and complete hearing on the petition to adopt, in the light of circumstances existing at the present time with respect to the best interests of the child, and, likewise, with respect to the capacity of the mother of the child and the petitioner to act in the best interests of the child.

For the reasons stated, therefore, this cause will be remanded to the circuit court of La Salle County with directions to conduct a full hearing under the Adoption Act with a view to determining whether or not the mother is a fit person to retain her status with the child, and, also, to determine what is in the best interests of the child with respect to the petition to adopt filed herein.

Reversed and remanded for further proceedings.

STOUDER and STENGEL, JJ., concur.