0767

AETNA CASUALTY & SURETY COMPANY, a corporation; and Doris Geneva Greer, as Administratrix D.B.N.C.T.A. of the Estate of Charles Furman Greer, Deceased, Respondents v. SECURITY FORCES, INC., and Security Insurance Company of Hartford, Appellants.

(347 S. E. (2d) 903)

Court of Appeals

*John E. Johnston, Bradford N. Martin* and *Gwendolyn G. Embler,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellants.*

*N. Heyward Clarkson, III,* of *Rainey, Britton, Gibbes & Clarkson,* and *C. Wade Cleveland,* Greenville, *for respondents.*

Heard April 14, 1986.

Decided Aug. 4, 1986.

SANDERS, Chief Judge:

Appellants Security Forces, Inc. and Security Insurance Company of Hartford appeal from an order of the Circuit Court ruling that respondents Aetna Casualty & Surety Company and Doris Geneva Greer, as administratrix D.B.N.C.T.A. of the estate of Charles Furman Greer, could not be liable in connection with an action previously filed by Security Forces against the estate. We reverse.

Our primary task in this appeal is to establish which of the following has precedence: (1) the duty of Aetna, as an automobile liability insurer, to one who holds the status of an insured by virtue of the policy's omnibus coverage or (2) the rights accruing to Aetna by virtue of its status as subrogee of the policy's named insured. Here, Aetna's duty as an insurer on the one hand and its subrogated rights on the other are at hopeless loggerheads. We hold that in this case Aetna's duty as an insurer is paramount.

The facts, though somewhat involved, can be fairly summarized as follows.

In July 1970, Security Forces and Hystron Corporation had in effect a contract under which Security Forces pro-

vided Hystron with guard services to protect Hystron's property in Spartanburg County. Security Forces agreed to defend and hold Hystron harmless in connection with any claims arising as a result of operations performed by Security Forces. Security Forces also agreed to obtain general liability and automobile liability insurance in specified amounts of coverage. In fulfillment of this agreement Security Forces acquired a combined general and automobile liability insurance policy from Security Insurance. Security Forces provided Hystron with Security Insurance's certificate of insurance, which repeated verbatim the hold harmless provision contained in the contract for guard services.

Among the guards Security Forces assigned to protect Hystron's property was Charles Furman Greer. On July 27, 1970, while Greer was on duty at the Hystron location, Hystron directed him to transport one Hans Biener, a Hystron employee, and his family to the airport, using an automobile owned by Hystron. While in route to the airport the automobile struck a bridge abutment. Biener's wife was killed and the other members of the Biener family were injured. Greer later died from the injuries he received in the accident.

At the time of the accident Hystron had in force an automobile liability insurance policy issued by Aetna. Under the policy Hystron was the named insured and the automobile Greer drove was an insured vehicle. Under the policy's omnibus coverage Greer had the status of an insured because he was a permissive user.

The Bieners brought suit in the State of New York against Hystron for injury and death. Hystron joined Security Forces as a third party defendant in that suit, seeking contractual indemnity from Security Forces based upon their agreement for guard services. Security Forces then attempted to join Greer's estate as a fourth party defendant seeking implied indemnity from the estate for its liability, if any, to Hystron. The estate, in turn, sought to join Aetna as a fifth party defendant seeking indemnity from Aetna for its liability, if any to Security Forces. The trial court ruled it did not have personal jurisdiction over the estate. Nevertheless, the trial court's order set forth limits upon the

right of Security Forces to seek indemnity from the estate, and the estate to seek indemnity from Aetna.

The parties to the action stipulated damages to be $450,000. The New York trial court ruled that Hystron was directly liable to the Bieners and that Security Forces was obligated to indemnify Hystron for Hystron's liability to the Bieners under the hold harmless provision of the contract for guard services. On appeal, the Appellate Division of the New York Supreme Court, in a 1980 decision, affirmed these aspects of the trial court's order. Without explanation, however, the Appellate Division modified the order to delete the limitations imposed on any future actions related to the fourth and fifth party actions against the estate and Aetna respectively.

Aetna, as insurer of Hystron, then paid the Bieners, and Security Insurance, as insurer of Security Forces, indemnified Aetna the amount it had paid the Bieners.

In October 1983, Security Forces filed an action in the Court of Common Pleas for Spartanburg County against the estate of its former employee, Greer, seeking implied indemnity based on the right of a master to maintain a suit against a servant where alleged misconduct of the servant has given rise to vicarious liability of the master. The proceeds of the Aetna policy are the only undistributed asset of Greer's estate.

Aetna and the administratrix of Greer's estate then brought this declaratory judgment action against Security Forces and Security Insurance seeking an order that neither Aetna nor the estate could be liable to Security Forces in connection with its pending suit against the estate.

In granting Aetna and the estate the relief they sought, the Circuit Court focused upon Aetna's right to be subrogated to the rights of Hystron, its insured. The Court noted that Aetna, in its status as Hystron's subrogee, is entitled to the benefit of both the hold harmless provision in the contract for guard services between Hystron and Security Forces and the insurance protection that Security Forces obtained from Security Insurance as part of Security Forces' performance of the contract. The Court reasoned that to require Aetna to defend Security Forces' suit against

Greer's estate and pay any resulting money judgment would destroy Aetna's protection, as Hystron's subrogee, under the hold harmless provision.[1]

Although the Circuit Court correctly analyzed the effect of such a decision against Aetna, we conclude it erred in giving effect to Aetna's rights as Hystron's subrogee over Aetna's contractual duty as the insurer of Greer.

Aetna's right, as Hystron's subrogee, to the protection of the hold harmless provision arises from the policy it issued to Hystron. Aetna's contractual duties as Greer's insurer arise out of the same policy. Aetna's right and its duties are separate and distinct. In the absence of either one, the other would undoubtedly dictate the result in this case. Resolution of this dispute requires only a choice as between the two. On the facts of this case we are unwilling to subordinate Aetna's duty to its insured to its right of subrogation accruing from another insured. This choice is consistent with the long-standing line of precedent in this jurisdiction that intensifies the duty of an insurer to its insured based upon the special nature of a contract of insurance. *See Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S. C. 286, 170 S. E. 346 (1933); *Miles v. State Farm Mutual Automobile Insurance Co.*, 238 S. C. 374, 120 S. E. (2d) 217 (1961); *Nichols v. State Farm Mutual Automobile Insurance Co.*, 279 S. C. 336, 306 S. E. (2d) 616 (1983). *See also Brown v. South Carolina Insurance Co.*, 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984).

Here, Aetna agreed with Hystron to insure permissive users, like Greer, of Hystron's vehicle. Then, as now, this coverage was required by statute. *See* Sections 46-750.31 to —750.32 of the Code of Laws of South Carolina, 1962, now codified in Sections 56-9-820 to -830 of the Code of Laws of South Carolina, 1976. Aetna may not now nullify this obligation by interposing a separate agreement (the hold harmless provision) through its rights as Hystron's subrogee. *Cf. Pennsylvania National Mutual Ca-*

---

[1] The Circuit Court ruled that Greer's estate could not be liable because the Aetna policy is its only undistributed asset. *See Moultis v. Degen,* 279 S. C. 1, 301 S. E. (2d) 554 (1983) (a tort action is a claim against an estate and is barred unless an account has been filed within five months after notice, but where a closed estate has a liability insurance policy, the estate may be reopened so that a tort action may be pursued and judgment, if obtained, paid by the policy).

*sualty Insurance Co. v. Parker*, 282 S. C. 546, 551, 320 S. E. (2d) 458, 461 (Ct. App. 1984) ("Where a statute requires insurance for the benefit of the public ... the insurer is not permitted to nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover."). Under the circumstances of this case, requiring Aetna to fulfill its obligations to its insured does indeed have the effect of vitiating its rights as Hystron's subrogee with respect to the hold harmless provision. It does not, however, defeat the purpose of the hold harmless provision, which is to protect Hystron from liability arising from Security Forces' operations. Hystron has received the full benefit of the hold harmless provision from Security Forces. Hystron's policy with Aetna merely afforded it additional protection that would apply in circumstances not covered by the hold harmless provision. Merely because Hystron may have duplicated its protection in this instance with the Aetna policy is no reason to nullify Aetna's duty to its insured, Greer.

Our decision rests also on the established principle of insurance law that "[n]o right of subrogation can arise in favor of the insurer against its own insured, since by definition subrogation arises only with respect to the rights of the insured against third persons to whom the insurer owes no duty." 16 *Couch on Insurance 2d* § 61:136 (Rev. ed. 1983). *See also E. C. Long, Inc. v. Brennan's of Atlanta, Inc.*, 148 Ga. App. 796, 252 S. E. (2d) 642 (1979). Similarly, "[n]o right of subrogation arises against a person who holds the status of an additional insured ... by the terms of the policy...." 16 *Couch on Insurance 2d § 61:137 (Rev. ed. 1983). See also Sherwood Trucking, Inc. v. Carolina Casualty Insurance Co.*, 552 F. (2d) 568 (4th Cir. 1977).

As noted previously, Greer had the status of an insured under the Aetna policy, specifically subparagraph (c):[2]

---

[2] The parties seem to accept as a premise to their arguments that Greer held the status of an insured under the Aetna policy. In any event, facts contained in the Statement of the Case establish Greer as an insured under subparagraph (c). Where, as here, the parties to an appeal have not appealed an order settling the record on appeal and specifying facts to be contained in the Statement, the parties are bound by those facts. *See Patel v. Southern Brokers, Ltd.*, 277 S. C. 490, 289 S. E. (2d) 642 (1982); *Rhodes v. Spartanburg County*, 262 S. C. 644, 207 S. E. (2d) 85 (1974); Rule 4, Section 3A, Rules of Practice in the Supreme Court of South Carolina.

Each of the following is an insured under this insurance to the extent set forth below:

\* \* \* \* \* \*

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured [Hystron], provided his actual operation ... is within the scope of such permission. ...

The next subparagraph of the policy identifies other parties who may also enjoy the status of an insured:

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of any insured under (a), (b) or (c) above.

Under subparagraph (d) Security Forces is also an insured to the extent that it is vicariously liable for Greer's acts or omissions as an insured under subparagraph (c). Because Aetna has no right of subrogation against its insureds, in its status as Hystron's subrogee it may not interpose the hold harmless provision against Security Forces as justification to avoid its contractual responsibility to Greer.

Aetna contends further that to allow Security Forces to collect from it through the estate would create a circular chain of recovery. Specifically, Aetna contends that if it paid Security Forces to satisfy any judgment against Greer's estate, then Aetna, as Hystron's subrogee, would seek to collect from Security Forces under the hold harmless provision. The cycle would then begin anew, ad infinitum. Our decision, however, that Aetna cannot be subrogated against its own insured, Security Forces, breaks this chain and disposes of this argument.

Aetna argues finally that to require it to fulfill its responsibilities to Greer's estate would effectively deny the judgment of the New York courts full faith and credit in the courts of this state. Aetna reasons that because the New York judgment requires Security Forces to indemnify Hystron, to require Aetna, which stands in the shoes of Hystron as Hystron's subrogee, to pay Security Forces in the suit now pending would be to deny the New York judgment its ultimate effect. We conclude this argument has no merit.

The full faith and credit clause of the federal constitution requires courts of one state to give such effect to a judgment of a sister state as it would have in the sister state. *See Hamilton v. Patterson*, 236 S. C. 487, 115 S. E. (2d) 68 (1960); *Durfee v. Duke*, 375 U. S. 106, 84 S. Ct. 242, 11 L. Ed. (2d) 186 (1963). We must therefore decide whether the New York courts would accord their judgment preclusive effect over either this declaratory judgment action or Security Forces' pending suit against Greer's estate. *Cf. Harrison v. Springdale Water & Sewer Commission*, 780 F. (2d) 1422 (8th Cir. 1986) (under federal full faith and credit statute federal courts extend both res judicata and collateral estoppel effect to state court judgments). A comparison of the New York and South Carolina authorities shows that their respective doctrines of res judicata and collateral estoppel are substantially the same.

The New York judgment has neither res judicata nor collateral estoppel effect over the proceedings in this state because the Appellate Division expressly deleted from the trial court's order its attempted resolution of both the claim and issues involved in the litigation here. There can be no res judicata effect for at least the reason that the New York judgment does not finally determine the merits of the claim now being resolved in this litigation. *See H. G. Hall Construction Co. v. J. E. P. Enterprises*, 283 S. C. 196, 321 S. E. (2d) 267 (Ct. App. 1984); *Matter of American Insurance Co.*, 43 N. Y. (2d) 184, 401 N. Y. S. (2d) 36, 371 N. E. (2d) 798 (1977). Similarly, there is no collateral estoppel effect because the issues involved here were not decided by the New York courts. Instead, the Appellate Division's deletion of aspects of the trial court's order left the issues unadjudicated. *See Liberty Mutual Insurance Co. v. Employers Insurance of Wausau*, 284 S. C. 234, 325 S. E. (2d) 566 (Ct. App. 1985); *Kaufman v. Eli Lily and Co.*, 65 N. Y. (2d) 449, 492 N. Y. S. (2d) 584, 482 N. E. (2d) 63 (1985).

For these reasons, the order of the Circuit Court is

Reversed.

SHAW and BELL, JJ., concur.